CATHERINE T. SMITH and Others, as Executors, etc., of HUGH SMITH, Deceased, Appellants and Respondents, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent and Appellant.

*Assessment — when invalid under chapter 335 of 1873 — the commencement of the work the day prior to the act taking effect sustains the assessment.*

An assessment levied upon real estate, situated within the city of New York, to pay for the construction of a sewer during the operation of chapter 335 of the Laws of 1873 is void, if the expenses of such work were more than $1,000 and the work was not let by contract, unless the work was commenced prior to the passage of such act.

The fact that such work was commenced the day previous to the taking effect of such act is sufficient to sustain the validity of the assessment.

FOLLETT, J., dissenting.

CROSS-APPEALS by the plaintiffs, Catherine T. Smith and others, executors, etc., of Hugh Smith, deceased, and by the defendant, The Mayor, Aldermen and Commonalty of the City of New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 27th day of April, 1894, upon the verdict of a jury rendered by direction of the court after a trial at the New York Circuit.

*John F. Kavanagh,* for the plaintiffs.

*George L. Sterling,* for the defendant.

O'BRIEN, J. :

This action was brought to recover sums paid by plaintiffs for two assessments for sewers in the Boulevard. The first was an assessment for sewers between Ninety-second and One Hundred and Sixth streets, and the second an assessment for sewers between Sixty-first and Seventy-seventh streets. By the judgment the plaintiffs recovered the first but were nonsuited as to the second, and it is from the refusal to allow a recovery for the second assessment paid that the plaintiffs appeal, while the defendant appeals from so much of the judgment as allows any recovery.

Questions involving assessments for the improvement of the Boulevard have been before this court and the Court of Appeals so many times that it is unnecessary to recite the facts at length, it

being sufficient to state only those that present the questions raised upon this appeal.

Between the years 1872 and 1876 the construction of the Boulevard between Fifty-ninth and One Hundred and Fifty-fourth streets was in progress by men employed by days' work and not by contract. This construction included, not only the regulating and grading of the Boulevard, but the building of the sewers. With respect to the latter, the area to be covered being nearly five miles long and the grades varying greatly, it was divided for purposes of sewerage into five sections, which when completed resulted in five assessments, one for each of these sections or subdivisions, the assessments being confirmed in 1881. The charter of 1873 (Chap. 335, Laws of 1873) went into effect on the 30th of April of that year, and required that all contracts must be let at public letting, if for more than $1,000, " excepting such works now in progress as are authorized by law or ordinance to be done otherwise than by contract." (§ 91.) The work on the sewers was all done by days' work, and the amount upon each section was greatly in excess of $1,000.

When the question was first presented it was sought to sustain the legality of the assessment for the entire sewer by claiming that the work in progress upon one section was work in progress upon each subdivision thereof. This, however, was disposed of by the Court of Appeals (*Matter of Blodgett*, 91 N. Y. 117) adversely to the city.

Upon the authority of that case the assessment levied upon the plaintiffs' property for the section of the sewer between Ninety-second and One Hundred and Sixth streets was void, it being conceded that it was for more than $1,000 and was all done, not by contract, but by days' work admittedly commenced after the passage of the charter of 1873. (*Tripler* v. *Mayor*, 125 N. Y. 617; 139 id. 1.) Although conceding the technical illegality of such assessment, the defendant insists that no recovery for money so paid can be had, upon the ground that the remedy by suit of this nature has been taken away by statute and that the payment must be considered to have been made voluntarily. Upon this claim the recent decision of this court in *Mutual Life Ins. Co.* v. *Mayor* (79 Hun, 482) is controlling upon this court.

As to the section between Sixty-first and Seventy-seventh streets, the testimony shows that on April twenty-ninth, one day before the charter of 1873 went into effect, the sewer excavation was begun, there. being employed on that day on that section a foreman, a blaster, forty-one rockmen, eleven laborers, one blacksmith, three carts and eight double teams, and on the next day the work was continued and right along afterwards until completed, by days' work. The question presented is as to whether work upon this section can be regarded as work then in progress.

In *The Matter of Blodgett* (*supra*) it is said : "We have recently considered the meaning of this phrase (work in progress), as used in the charter, and the scope and purpose of the exception thereby declared (*Matter of Weil*, 83 N. Y. 543). In that case we expressed the opinion that the purpose of the exception was to avoid the evil and complication arising from an application of the contract system to work already commenced and moving towards completion in a different manner, and was descriptive of cases where the city was already committed to a specific mode of doing the work, and could not change the system without complication or confusion.   *   *   *   The exception of the charter had an evident purpose and aim. The general and dominant idea was to do all of the city's work by the contract system, and that only was intended to be exempted which was already begun — which was 'in progress' on a system and in a mode of its own, and which could not be interfered with unless at the peril of evil consequences."

Under this definition of what is meant by the phrase "work in progress," a close question is presented whether such work as was done on the day preceding the taking effect of the charter was sufficient to bring it within the exception and permit of its being continued otherwise than by contract. On one side it can be urged with much force that work could have been stopped at once without occasioning any complication or confusion, or evil consequences to the city, and a contract let therefor without such action coming in conflict with any different system. On the other hand, the making of the surveys, profiles, etc., coupled with the fact that work had been actually commenced, argues strongly for the validity of the assessment under a liberal construction of the language used in the charter. When we recall the advantage and benefit that this boule-

vard was to the abutting property, and the injustice to be done by placing the assessment upon the city at large, we think that a liberal construction should be indulged in in support of the assessment.

We are, therefore, of the opinion that the judgment was right and should be affirmed, without costs to either party upon this appeal.

VAN BRUNT, P. J., concurred.

FOLLETT, J. (dissenting) :

I concur in that part of the prevailing opinion which sustains the recovery for $2,844.85, but dissent from that portion which denies the plaintiffs' right to recover $7,371.83, the amount of the assessment collected, with interest, on account of the work done on the second section between Sixty-first and Seventy-seventh streets.

Section 91 of chapter 335 of the Laws of 1873 provides :

" Whenever any work is necessary to be done to complete or perfect a particular job, or any supply is needful for any particular purpose, which work and job is to be undertaken or supply furnished for the corporation, and the several parts of the said work or supply shall together involve the expenditure of more than one thousand dollars, the same shall be by contract, under such regulations concerning it as shall be established by ordinance of the common council, *excepting such works now in progress as are authorized by law or ordinance to be done otherwise than by contract.*"

The exception in italics relates to particular works in progress April 30, 1873, when the statute took effect, which had then been authorized by law or ordinance to be done otherwise than by contract. Two conditions must have existed April 30, 1873, to bring the Boulevard sewer within the exception : (1) The work must have been in progress, and (2) it must have been " authorized by law or ordinance to be done otherwise than by contract." Our attention has not been called to any law or ordinance authorizing this particular work to be done otherwise than by contract. On the contrary, the undisputed evidence is that there was no such ordinance, and so, the work on this sewer is not within the exception. (Chap. 137, Laws of 1870, § 104 ; *Matter of Robbins,* 82 N. Y. 131.)

Notwithstanding the statute and the fact that there was no law or

ordinance authorizing the construction of this sewer otherwise than by contract, the commissioner of public works constructed the whole of it by days' work. This sewer is about five miles long, divided into five sections, numbered from one to five, every one having a separate outlet. The property assessed was divided into five assessment areas corresponding with the five sewer sections, so that the expense, or a portion thereof, of constructing each section was assessed on the property benefited by that particular section. Prior to April 30, 1873, no work had been done on any part of this sewer except that performed the day before on section 2, and it has been held that the work was not in progress on the other sections (Nos. 1, 3, 4 and 5) within the meaning of the statute, and that the local assessments for those sections of the improvement are void. The Court of Appeals in the cases cited in the prevailing opinion has construed the meaning of the term " works now in progress," and as we understand the cases, the term refers to works under construction and so far advanced (April 30, 1873) that a change of system would involve complication and confusion. Certainly the work done in a single day on this important improvement, involving the expenditure of several hundred thousand dollars, was not so far advanced as to involve complication or confusion by directing it to be done by contract. It is quite apparent, we think, that commencing work on this section April 29, 1873, was a mere subterfuge, resorted to for the purpose of defeating this remedial statute. This is shown by the evidence in the record and by the history of the construction of this improvement as given in the prevailing opinion and in the cases referred to. It is urged that the property owners assessed were benefited by the work, and, therefore, a liberal construction should be indulged in to support the assessment. I think this is not a legal reason. Assessments are sometimes set aside because they are unequal or inequitable, but tax levies are never sustained because they are equitable ; they must be legal. By sustaining this assessment we countenance the action of the department of public works in attempting to avoid the operation of this highly remedial statute, which, like all other such statutes, should be construed so as to thwart the mischief which the statute was intended to prevent, and this court ought not to point out a way by which this and other like statutes may be subverted.

It is urged that the whole city should not bear the expense of this improvement which so largely benefited the owners of property on the Boulevard. A single individual is not usually responsible for the improper action of a department of a municipality, but it is often just and legal to hold the entire body of the citizens responsible for such action.

The judgment should be modified by increasing the amount of the recovery by $7,371.83, and, as modified, affirmed, with costs in favor of the plaintiffs and against the defendant.

Judgment affirmed, without costs to either party.