(33 App. Div. 350.)

## LESSTER v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. October 14, 1898.)

1. TAXATION—PAYMENT OF TAX UNDER MISTAKE—RECOVERY.

    In an action against a city for the repayment of a tax on real estate paid by its former owner by mistake, and in ignorance of the fact that the title to the property had passed to the city, the fact that the amount had been paid to the state, so that the city could not get a credit or repayment thereof, was not a defense, since, if the city, as owner of the property, was not entitled to make the payment to the state, it should not, with knowledge of the facts, have done so.

2. SAME—VOLUNTARY PAYMENT—MUTUAL MISTAKE OF FACT.

    Repayment of a tax on real estate paid to a city after title to the property had passed to it cannot be resisted by it on the ground that the payment was voluntary, where there was a mutual mistake as to the title, and the money was received by the city under no demand or claim of right.

    McLaughlin, J., and Van Brunt, P. J., dissenting.

Appeal from trial term.

Action by William C. Lesster against the mayor, aldermen, and commonalty of the city of New York. From a judgment for plaintiff entered upon a verdict directed by the court, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ.

James M. Ward, for appellant.

John M. Bowers, for respondent.

O'BRIEN, J. This is an action brought to recover the amount of taxes which the plaintiff paid on property in Barclay street, New York City, for the year 1894. In January, 1890, proceedings for opening and widening College place between Chambers and Greenwich streets were begun, and one of the properties condemned was the one in question, then owned by the plaintiff. The report of the commissioners was confirmed on May 8, 1894. In September, 1894, the taxes for that year were confirmed. In December, 1894, the plaintiff paid the taxes on the property; and on January 4, 1895, he demanded back the amount so paid, which was refused. The plaintiff was the owner of 20 different pieces of real estate located in the city of New York, on which he paid taxes. He was accustomed to have the tax bills made out in one complete list. This he did in 1894, by taking the old bill for 1893, handing it to the clerk, and requesting him to place on one list the taxes for 1894 on his different properties. He testified:

"I had forgotten that the property had been acquired by the city. I did not know it was acquired by the city. I did not know it was confirmed. * * * I think that award had not been paid at that time. * * * What I say to the jury is that I did not know at that time that the report had been confirmed."

It thus appears that before the tax for 1894 had been confirmed on this property the city had acquired all the right, title, and interest of the plaintiff therein, and that thereafter, in ignorance thereof, and

by mistake, the plaintiff paid the tax.    We do not think it will be claimed that the plaintiff was bound to pay such taxes, assuming that an assessment against the plaintiff as the owner of the property would have created a debt due from him to the city, the liability to pay which would have been determined on the second Monday of January in that year, and the city would therefore have been entitled to collect it.    In re Babcock, 115 N. Y. 458, 22 N. E. 263.    As it was not assessed to the plaintiff, section 818 of the consolidation act applies, which declares that, where the name of the original owner of real property is not included in the assessment list, no tax shall be collected, except from the real estate so assessed.    Nor was it a lien or charge on the property at the time the report of the commissioners was confirmed.    Association for Benefit of Colored Orphans v. Mayor, etc., of New York, 104 N. Y. 581, 12 N. E. 279; Lathers v. Keogh, 109 N. Y. 583, 17 N. E. 131.    In the latter case it was said (page 589, 109 N. Y., and page 133, 17 N. E.):

"Until these requirements of the law have been fulfilled the tax is not due or payable, and no lien attaches to the property, nor can any legal charge for any tax be said to rest upon it.  *  *  *  We do not think, therefore, that an assessment or a tax exists as an incumbrance, or as a charge upon lands in the roll, within the meaning of a covenant in a deed against charges, taxes, assessments, and incumbrances, until it has been confirmed, and the amount thereof has been determined in the methods prescribed."

The city having obtained title in May, 1894, by the confirmation of the report, and the plaintiff not being liable therefor at that date, no indebtedness existed as against him which could be enforced.    The tax was confirmed in August or September, 1894, and thereupon it became a charge or lien upon the property.    At that time, however, the property belonged to the city, and, as shown, the plaintiff by mistake paid the tax.    These facts are not disputed, but the plaintiff's demand to have the amount so paid refunded is met by objections growing out of the time and manner of payment.    Thus, it is urged that it is only where the position of the party receiving the money will not be changed by repayment of any sum paid under a mistake of fact that such refunding can be enforced.    And it is insisted that, as the county of New York is required to pay its quota to the state tax in advance of collection of taxes for the year, as to so much of such taxes as may have been apportioned to this property that amount has been paid by the city, and the city cannot get a credit or repayment of the amount thus paid.    We regard this position as untenable, for the reason that if the city, as owner of the property, was not entitled to make the payment, it should not, with knowledge of the facts, have done so.    But a better reason lies in the circumstance that the property really belonged to the city, and its exemption from the state tax would result only from its devotion to public use.    It appears, however, that, in lieu of paying interest on the award, for some months after it acquired title to the property it permitted the plaintiff to collect and receive the rents therefrom.    The cases which hold that money paid under mistake could not be recovered unless the party receiving it could be put back in its original position have been in instances where the one receiving the money was entirely free and innocent of mistake.    It is freedom from mistake and con-

sequent injury, and not the inability to put such a one in the original position, that is the basis of the rule upon which these decisions rest. In Allen v. Mayor, etc., 4 E. D. Smith, 409, it is said:

"And those authorities show the rule to be that a plain and palpable ignorance of the facts at the time of the payment will entitle the mistaken party to recover back. * * * And these rules ought much more clearly to obtain when, as I think, it is shown by the complaint (indeed, as it is distinctly averred) the mistake was caused by the acts of the defendants themselves. Occupying the relation which the defendants do to the plaintiff in this matter, having authority in their official and governmental capacity to impose and collect assessments, having the control and possession of the records and maps relating to such assessments, the plaintiff was not only warranted in acting upon their notice, according to the natural inferences deducible from the service thereof upon him by the defendants, but he had a sort of official sanction of the very mistake under which he paid the amount. Why, then, ought not the defendants to repay the money so received from the plaintiff? He owed them nothing, and they had in fact no claim nor color of claim to any payment from him. I can find nothing in the complaint upon which it can be said that in conscience they should be permitted to retain it. * * * It is claimed that the payment by the plaintiff discharged the assessment as a lien on the lots actually assessed, and that, if the plaintiff be permitted to reclaim the money, the defendants will lose thereby. If this were conceded, I am by no means satisfied that the allegations in the complaint do not sufficiently charge this mistake to the fault of the defendants to visit upon them the consequent loss."

The further objection is urged against refunding that the payment as made was voluntary. What constitutes a voluntary payment has been many times discussed, and variously decided, and it is impossible to reconcile all the decisions. Thus, there is a long line of cases in this state where, in order to carry out a contract for the sale of property, assessments which subsequently were decided to be illegal have been paid; and it has been held that a payment so made was voluntary, and could not be recovered. Of this class, Tripler v. City of New York, 125 N. Y. 617, 26 N. E. 721, is an instance. There the plaintiff paid an illegal assessment to clear the premises assessed from the lien and incumbrance of the assessment, in compliance with the terms of sale and deed from the plaintiff to the purchaser. The court held that the payment was made without coercion, and could not be recovered back. So, in Wood v. City of New York, 25 App. Div. 579, 49 N. Y. Supp. 622, where, upon an application to the commissioner of public works for a permit to build vaults in front of the premises, the commissioner insisted on receiving more than he was then legally entitled to, but which the plaintiff paid in order to obtain a permit for the vault for the purpose of preventing litigation, and not delaying the construction of his building, it was held that such a payment was voluntary, and could not be recovered back. All this line of cases comes under the general rule of law, as stated in 18 Am. & Eng. Enc. Law, p. 214, that:

"A voluntary payment of money under a claim of right cannot in general be recovered back. To warrant such recovery there must be compulsion,— actual, present, potential,—and the demand must be illegal. In the absence of such compulsion a mere protest is not sufficient. The element of coercion is essential to the right."

This line of cases, however, is easily distinguishable from those where money has been paid under a mistake of fact. Here was a

clear mistake on the part of the plaintiff, in the payment made in ignorance of the fact that the report had been confirmed; and a receipt by the city of the money, which we must assume in honesty it would not have received had it recalled the fact that the tax was not a liability of the plaintiff, but was one which should be assumed by itself. It was not, therefore, a case of a payment made under a mistake of law, which is not recoverable, but one made under a mutual mistake of fact. In 7 Wait, Act. & Def. p. 402, the rule is thus stated:

"If a party, with full knowledge of all the facts, voluntarily pays money in satisfaction of a demand made upon him, he cannot afterwards allege such payment to have been unjustly demanded, and recover back the money."

And in Waite v. Leggett, 8 Cow. 195, it was said:

"To constitute a voluntary payment, it must appear that the money was paid with knowledge of the facts which showed no liability to pay, and even with knowledge that it ought not to be paid."

So, in Mayer v. Mayor, etc., 2 Hun, 306, where taxes were paid by mistake, the court, after quoting Allen v. Mayor, etc., supra, said:

"It has since been held by the court of last resort (Bank v. Eltinge, 40 N. Y. 391; Union Nat. Bank of Troy v. Sixth Nat. Bank of New York, 43 N. Y. 452), not only that it does not affect the right of the payor to recover, that the mistake arose from the want of care on his part, but that it is equally unavailable to show that the defendant cannot be restored to his original position upon paying the money back."

In this connection it should be noted that the money was received by the city under no demand or claim of right, nor was it paid by the plaintiff with knowledge of the fact that the title to the property before the tax was confirmed had passed to the city. We think, therefore, that such payment cannot be held to be voluntary, but, being one made through inadvertence and mistake, should, in consonance with what is just and right, be returned to the plaintiff.

The judgment should therefore be affirmed, with costs. All concur, except VAN BRUNT, P. J., and McLAUGHLIN, J., dissenting.

McLAUGHLIN, J. I dissent. Under the evidence, two questions of fact were presented, which should have been submitted to the jury: (1) Whether the money in question was voluntarily paid by plaintiff to defendant; (2) if not, whether it was paid, as claimed by plaintiff, under a mutual mistake of fact. The learned justice refused to submit either of these questions to the jury, and the defendant excepted. The exception was well taken, and calls for a reversal of the judgment.

VAN BRUNT, P. J., concurs.